GERALD C. MANN
ATTORNEY GENERAL

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Claude A. Williams
Chairman & Executive Director
Texas Unemployment Compensation Commission
Austin, Texas

Dear Mr. Williams:

Opinion No. O-4593
Re: Under existing law may
the Texas Unemployment
Compensation Commission
administer Federal War
Displacement Grant to
funds and it the same
time pay unemployment
compensation benefits.

You have submitted copies of the Federal legisla-
tion for War Displacement Benefits and specifications of
the Social Security Board for carrying into effect a plan for
payment of the benefits with a request for an answer to the
following questions:

"1. Under existing State law, may this Com-
mission administer or pay out a Federal War Dis-
placement Grant to this State?

"2. Would the payment of Federal War Dis-
placement benefits operate, under existing law,
to preclude the payment of regular unemployment
compensation benefits under the Texas law other
than in the reduced amount contemplated by
Article 5221b-3 (c) (5)?"



We will not attempt to quote or discuss all phases of the plan outlined in the exhibits attached to your letter, but we observe this legislation as an attempt to supplement the amounts payable to unemployed individuals under the State benefit plan with an additional amount of Federal money sufficient to care for the unemployed during the period necessary for training in other lines of work. The funds appropriated by Congress to be apportioned to the States and administered by the various State Unemployment Agencies according to the preconceived regulations of the Social Security Board.

We have considered the Texas Unemployment Compensation law as enacted by the 3rd Called Session of the (44th) Legislature and since amended for the intention of the legislation in the furtherance of a State unemployment insurance plan. Section 11 (1) of the original enactment and Article 8221b-9(1) contains this admonition:

"State-Federal cooperation: In the administration of this Act, the Commission shall cooperate to the fullest extent consistent with the provisions of this Act, with the Social Security Board, created by the Social Security Act, approved August 14, 1935, as amended; shall make reports in such form and containing such information as the Social Security Board may from time to time require, and shall comply with such provisions as the social security board may from time to time find it necessary to assure the correctness and verification of such report; and shall comply with the regulations prescribed by the Social Security Board governing the expenditures of such sums as may be allotted and paid to this State under Title III of the Social Security Act for the purpose of assisting in the administration of this Act.

"Upon request therefor, the Commission shall furnish to any agency of the United States charged with the administration of public works or assistance through public employment, the name, address, ordinary occupation and employment status of each recipient of benefits and such recipient's rights to further benefits under this Act."

The 45th Regular Session of the Texas Legislature amended Article 5221b, Vernon's Revised Civil Statutes, to enable Texas to comply with the Railroad Retirement Act. At that time Article 5221b was amended in part by adding Section 9 (a), which reads in part:

"The Commission may afford reasonable coopera- tion with every agency of the United States charged with the administration of any unemployment insur- ance clause."

The provisions of our law quoted above certainly evince an intention of the Legislature that the Texas Unem- ployment Compensation Commission should cooperate with the Social Security Board in the administration of its unemploy- ment benefit plan when that cooperation was not repugnant to the statutes of this State.

The 45th Legislature of the State of Texas in 1937 appended to the departmental appropriation bill a rider controlling the expenditure of State funds and containing regulations of the various State departments. One paragraph at page 1488 of the rider was designated "United States Funds and Aid." This enactment reads:

"The proper officer or officers of any State department, bureau or divisions of State agencies are hereby authorized to make application for and accept any gift, grant or allotments of funds from the United States Government to be used on State cooperative and other Federal projects and programs in Texas, including construction of public buildings, repairs and improvements. Any of such Federal funds may be deposited with the State Treasury and are hereby appropriated to the specific purpose authorized by the Federal Government."

The above paragraph was again enacted and made a part of the rider to the departmental appropriation bill passed by the 46th Legislature of Texas. The rider attached to the de- partmental appropriation bill enacted by the 47th Legislature of the State of Texas, under the heading "General Provisions," Section 2, paragraph No. (10), again enacts a provision for the acceptance of United States funds and aid in the same terms as the original enactment quoted above.

The wording of Article 5221b, Section 9 (1), supra, imposes upon your Commission the duty to cooperate to the fullest extent consistent with the provisions of the Texas Unemployment Law with the Social Security Board in its program. The Legislature in its rider to the appropriation bill quoted above has authorized the various state officers, departments, bureaus or divisions to make application for or to accept any gift, grants or allotments of funds from the United States Government to be used on State cooperative or federal projects and programs in this State. The wording of Section 10 specifically authorizes the depositing of funds granted to this State by the Federal Government in the State Treasury and appropriatesthem for the specific purpose authorized by the Federal Government.

Without comment upon the wisdom of the Federal Legislation or the further withdrawal of the powers inherent in the State, the admonition of the Legislature, together with the expressed authorization for the acceptance of funds from the Federal Government, appears to us to be sufficient authority for the Texas Unemployment Compensation Commission to administer or pay out a Federal War Displacement Grant to this State. Therefore, our answer to your question No. 1 is "yes."

Your second question inquires whether the payment of the Federal War Displacement Benefits would, under the existing law, preclude the payment of unemployment compensation benefits under the Texas Law as provided by Article 5221b-3 (e) (3). That section reads as follows:

"Old Age Benefits under Title II of the Social Security Act as amended, or similar payments under any Act of Congress, or a State Legislature, or employer pension plan, provided, that if such remuneration is less than the benefits which would otherwise be due under this Act, he shall be entitled to receive for such benefit period, if otherwise eligible, benefits reduced by the amount of such remuneration."

The right to administer and pay out the monies granted to this State under the War Displacement Plan is not to be confused with the payment of benefits under the terms of Article 5221b, Vernon's Revised Civil Statutes. The procedure and

limitations placed in Article 5221b can be relaxed or changed
only by the Legislature of Texas. Section 1 of Article 5221b,
supra, provides statutory regulations of amounts payable, the
duration of payment and how benefits shall be paid. It fixes
a maximum and a minimum that may be paid from the Texas benefit
account.

Article 5221b, Section 3 (e), provides that an
individual shall be disqualified for benefits if he is receiv-
ing or has received remuneration on:

"(1) Wages in lieu of notice;

"(2) Compensation for temporary partial dis-
ability, temporary total disability or total and
permanent disability under the Workmen's Compensa-
tion law of any State or under a similar law of
the United States;

"(3) Old Age Benefits under Title II of the
Social Security Act as amended, or similar payments
under any Act of Congress, or a State Legislature,
or employer pension plan, provided, that if such
remuneration is less than the benefits which would
otherwise be due under this Act, he shall be entitled
to receive for such benefit period, if otherwise
eligible, benefits reduced by the amount of such
remuneration."

This limitation discloses that the Legislature did
not intend that benefits be paid if the applicant was receiving
or had received remuneration from some other named source dur-
ing his unemployment. The statute eliminates wages in lieu
of notice, all disability insurance, employer pension plan,
old age benefits or similar payments under any Act of Congress.
We believe that War Displacement Grant is within the prohibition
of Section 3 (e)(3), and that payment of benefits under
Article 5221b would be limited by the terms of (e)(3).

The Legislature of this State through the Texas Unem-
ployment Compensation Commission has no power to limit the
amount of War Displacement benefits in this State, but it must
distribute the benefits payable under the Texas Unemployment
Act as provided in our law.

Our answer to your second question is that the payment of Federal War Displacement Benefits would preclude the payment of the regular unemployment compensation benefits under the Texas Law other than in the reduced amount provided in Article 5221b-3(c)(3).

Yours very truly

ATTORNEY GENERAL OF TEXAS

By
Morris Hodges
Assistant

APPROVED FEB 14, 1942

FIRST ASSISTANT
ATTORNEY GENERAL

MH:LM

